<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VINCENT A. PARNELL,<br><br>    Plaintiff,<br><br>  v.<br><br>JACKSON TOWNSHIP, *et al.*,<br><br>    Defendants. | Civil Action No. 21-19326 (GC) (RLS)<br><br>**<u>OPINION</u>** |

<u>**CASTNER, U.S.D.J.**</u>

  **THIS MATTER** comes before the Court upon two Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  The first motion is from Defendants Michael Basso and Ernest Thomason, and the second motion is from Defendants Jackson Township and Matthew Kunz.  (ECF Nos. 19 & 20.)  Plaintiff Vincent Parnell opposed both motions, and Defendants Jackson Township and Matthew Kunz replied.  (ECF Nos. 24 & 29.) The Court has carefully considered the parties' submissions, and it decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth herein, and other good cause shown, Defendants' motions are **GRANTED** in part and **DENIED** in part. Specifically, judgment is entered in Defendants' favor on the official-capacity claims against Kunz, on the failure-to-train claim against Jackson Township, as well as the intentional infliction of emotional distress claim against all Defendants.  The motions are denied at this time as to all other claims.

## I.   **BACKGROUND**

### A. PROCEDURAL BACKGROUND

On October 26, 2021, Plaintiff Vincent Parnell sued Jackson Township, New Jersey; Police Chief Matthew Kunz; Officers Michael Basso and Ernest Thomason; as well as several other unidentified personnel in the Jackson Township Police Department.  (ECF No. 1.)  Plaintiff, a resident of Jackson, alleges that he was thrown to the ground, punched "numerous times," and struck in the head with a flashlight during a December 7, 2020 traffic stop on New Prospect Road in Jackson.  (*Id.* at 3.[1])

Plaintiff asserts eight causes of action.  The first four are pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments: Counts One and Two against Basso and Thomason for use of excessive force and for failure to intervene; Count Three against Kunz for supervisory liability; and Count Four against Jackson Township and Kunz for unlawful policy, custom, practice, and/or inadequate training.  (*Id.* at 3-10.)  The remaining four causes of action are state-law claims against Basso and Thomason: Count Five for violations of the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1, *et seq.*; Count Six for assault and battery; Count Seven for negligence; and Count Eight for intentional infliction of emotional distress.  (*Id.* at 10-13.)

Basso and Thomason moved for summary judgment on July 27, 2023.  (ECF No. 19.)  The next day, Jackson Township and Kunz did the same.  (ECF No. 20.)  On September 18, Plaintiff filed a single opposition to both motions.  (ECF No. 24.)  Jackson Township and Kunz replied on October 27.  (ECF No. 29.)

---

[1]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

### B.  Undisputed Facts as to December 7, 2020 Motor Vehicle Stop

Michael Basso and Ernest Thomason are police officers in the Jackson Township Police Department.  (ISMF & RISMF ¶¶ 2, 35.[2])  Both officers graduated from the Ocean County Police Academy, where they were trained on the use of force.  (ISMF & RISMF ¶¶ 3-4, 36-37.)  They were taught about the six levels of force and have received biannual training on the use of force.  (ISMF & RISMF ¶¶ 5-6, 38-39.)  Thomason was also trained to become a "use of force training officer" for the Jackson Township Police Department.  (ISMF & RISMF ¶ 7.)

On the evening of December 7, 2020, Thomason was "in the course of his duties as a police officer."  (ISMF & RISMF ¶¶ 8-9.)  Thomason heard a car traveling at a high rate of speed and saw a pickup truck improperly pass a car on a double yellow line.  (ISMF & RISMF ¶¶ 11, 45.)  Thomason drove his patrol vehicle after the pickup, which pulled over and stopped.  (ISMF & RISMF ¶¶ 12, 46-47.)  As Thomason approached the driver side door, he heard "screaming" and saw Plaintiff Vincent Parnell "punching" the steering wheel.  (ISMF & RISMF ¶¶ 13, 48-49.)  When Thomason asked Plaintiff to exit the pickup, Plaintiff locked the doors and said that he was not getting out.  (ISMF & RISMF ¶¶ 14-15, 17, 50.)  Plaintiff gave his driving credentials to Thomason.  (ISMF & RISMF ¶ 51.)  After Thomason explained that Plaintiff would be arrested if he did not exit, Plaintiff got out and went to the back of his pickup and faced the rear.  (ISMF & RISMF ¶¶ 18-19, 55-56.)

---

[2]  The Statement of Undisputed Material Facts from Basso and Thomason (ECF No. 19-1) is referred to as "ISMF," and Plaintiff's Response to their Statement of Material Facts (ECF No. 24-1 at 5-11) is referred to as "RISMF."  The Statement of Undisputed Material Facts from Jackson Township and Kunz (ECF No. 20-2) is referred to as "MSMF," and Plaintiff's Response to their Statement of Material Facts (ECF No. 24-1 at 12-19) is referred to as "RMSMF."  The Supplemental Statement of Undisputed Material Facts from Plaintiff (ECF No. 24-1 at 19-32) is referred to as "PSMF," and Jackson Township and Kunz's Response to Plaintiff's Supplemental Statement of Material Facts (ECF No. 29-1) is referred to as "RPSMF."  Basso and Thomason did not respond to Plaintiff's supplemental statement of material facts.

At that point, at about 8:12 p.m., Thomason and Basso (who had responded to the stop in uniform and had a flashlight in hand) were with Plaintiff at the back of the pickup.  (ISMF & RISMF ¶¶ 20, 40, 43.)  Plaintiff was not told he was under arrest.  (PSMF & RPSMF ¶ 64.)  An approximately thirty-second altercation then ensued that resulted in Plaintiff becoming handcuffed.  (ISMF & RISMF ¶¶ 28-29.)  Plaintiff was put into a patrol car where Plaintiff "thrash[ed] around" and threatened "to shoot and kill the officers."  (ISMF & RISMF ¶¶ 32-33, 66-67; MSMF & RMSMF ¶ 88.)  Plaintiff said insulting things as he was driven to the police station.  (ISMF & RISMF ¶¶ 33, 68-69.)

Plaintiff was brought to Monmouth Medical Center Southern Campus, where he was diagnosed with a scalp laceration that required four staples to repair.  (PSMF & RPSMF ¶ 6.)  On December 10, 2020, Plaintiff sought treatment at Jersey Shore Medical Center for headaches and was diagnosed with a concussion.  (PSMF & RPSMF ¶ 7.)

Plaintiff was charged with possession of marijuana under fifty grams, resisting arrest, aggravated assault, possession of a weapon, terroristic threats, and other motor vehicle summonses.  (MSMF & RMSMF ¶¶ 3, 20.)  The charges were resolved by Plaintiff's successful application to the pre-trial intervention program.[3]  (MSMF & RMSMF ¶ 4.)

### C.  Undisputed Facts as to Jackson Township Police Department

Matthew Kunz has been Chief of the Jackson Township Police Department since 2008.  (MSMF & RMSMF ¶ 91.)  Kunz is responsible for training, supervising, and disciplining police officers; ensuring the Attorney General guidelines are followed; and appointing personnel to maintain the Department's internal affairs process.  (MSMF & RMSMF ¶¶ 92-94; PSMF & RPSMF ¶¶ 54-55.)  Kunz requires all officers to receive use of force training twice a year in

---

[3]     A plaintiff's "enrollment in the PTI program does not bar [a] § 1983 claim."  *Meza v. Jackson Twp.*, Civ. No. 18-15206, 2021 WL 2549319, at *8 n.11 (D.N.J. June 22, 2021).

accordance with the Attorney General guidelines.  (MSMF & RMSMF ¶¶ 95-96.)  There is one full-time lieutenant in charge of internal affairs who reports directly to Kunz and meets with Kunz as needed to discuss investigations.  (MSMF & RMSMF ¶¶ 97-100.)

Jackson Township police officers are taught that they have a duty to intervene if another officer uses excessive force; to avoid head strikes; and that excessive force is a violation of civil rights.  (MSMF & RMSMF ¶¶ 101, 103-104; PSMF & RPSMF ¶¶ 56, 59, 61.)  The Department has an early warning system to track excessive force, complaints against individual officers, and internal affairs allegations.  (MSMF & RMSMF ¶ 102; PSMF & RPSMF ¶ 57.)  Internal affairs investigations may be initiated by either an external or internal complaint or an internal review of an existing situation.  (MSMF & RMSMF ¶ 105.)  A tort-claim notice or complaint alleging excessive force does not automatically trigger an investigation.  (MSMF & RMSMF ¶ 106.)

The Department monitors its officers' use of force.  (MSMF & RMSMF ¶ 108.)  An officer is required to produce a use-of-force report whenever there is "non-routine contact," which is contact greater than physically guiding a person into a police car.  (MSMF & RMSMF ¶ 110.)  These reports are sent directly to the officer's supervisor and are saved in a portal.  (MSMF & RMSMF ¶ 111.)  The Department's early warning system examines officers' involvement in various incidents and looks for a trend of misconduct, including excessive use of force.  (MSMF & RMSMF ¶¶ 112-115.)  The Department submits an annual report to the Attorney General's office on its officers' use of force.  (MSMF & RMSMF ¶ 108.)

Kunz and other Jackson Township police officers have been named as defendants in at least eight prior lawsuits where individuals alleged either (1) to have been the victims of excessive force, or (2) that the Department permitted an unconstitutional custom of approving its officers' excessive use of force, including through a flawed internal affairs process.  (PSMF & RPSMF ¶¶ 45-48.)

In the present case, Kunz determined that an internal affairs investigation was unnecessary because his review of the available evidence led him to conclude that "a reasonable officer could believe that [Plaintiff] was attempting to disarm [the officer] and thus . . . justified in using force." (MSMF & RMSMF ¶ 107; PSMF & RPSMF ¶ 64.)  Neither Basso nor Thomason were interviewed by internal affairs.  (PSMF & RPSMF ¶¶ 14, 34.)

**D.  DISPUTED FACTS AS TO DECEMBER 7, 2020 ALTERCATION**

The parties disagree as to what precisely occurred during the thirty-second altercation that led Plaintiff to become handcuffed after exiting his pickup truck on December 7, 2020.

Plaintiff contends that as he followed Thomason's instructions and put his hands on the back of the pickup, Thomason began to turn Plaintiff around, and "out of nowhere" Basso took Plaintiff by his hoodie, grabbed him, and hit the top of Plaintiff's head with a flashlight and drove Plaintiff to the pavement face-first.  (PSMF ¶ 3.)  Plaintiff asked how many times the officers were going to hit him, and they told him to stop resisting.  (PSMF ¶ 3.)  Plaintiff could not recall how many times he was hit by Thomason and Basso until he watched the mobile video recorder ("MVR") footage of the incident.  (PSMF ¶ 4.)  Plaintiff claims that it was the strike with the flashlight that left scars on the back of his head.  (PSMF ¶ 5.)

In contrast, Defendants contend that while Thomason was retrieving his handcuffs, Plaintiff turned around, uttered curse words, and grabbed Thomason.  (ISMF ¶¶ 21-22, 59; MSMF ¶¶ 39-40, 77-78.)  Plaintiff grabbed Thomason around the neck and at one point Plaintiff had his hand near Thomason's firearm.  (ISMF ¶¶ 30-31; MSMF ¶¶ 47-48.)  Thomason and Basso tried to control Plaintiff, with all three going to the ground.  (ISMF ¶¶ 23-25, 60-61; MSMF ¶¶ 41-43, 79-80.)  Thomason and Basso could not secure Plaintiff's arms so they punched Plaintiff to obtain physical compliance, striking him in several places.  (ISMF ¶¶ 26-27, 62; MSMF ¶¶ 44, 81.)  Although Basso had a flashlight in his hand, he denies that he used it to strike Plaintiff in the head.

6

(ISMF ¶¶ 42-43; MSMF ¶¶ 61-62.)  Thomason believes the cut on Plaintiff's head was caused by Plaintiff "thrashing around the back of the patrol vehicle."  (ISMF ¶ 34.)

## II.   **LEGAL STANDARD**

"Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).  Pursuant to Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)).  "A fact is material if—taken as true—it would affect the outcome of the case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

## III.   **DISCUSSION**

### A.   Counts One and Two—Excessive Force and Failure to Intervene

Defendants Basso and Thomason argue that "the doctrine of qualified immunity should protect . . . [them] from any claims of excessive force and of failure to intervene."  (ECF No. 19-2 at 20.)  They insist that their actions in this case were reasonable under the circumstances: "Not knowing [Plaintiff's] intentions, the officers had to make a split-second decision to ensure their safety, [Plaintiff's] safety and the safety of passing motorist[s]. . . .  Because of [the officers'] decisive actions, some 28 seconds after [Plaintiff] turned towards . . . Thomason, [Plaintiff] is under the control of the officers . . . and handcuffed."  (*Id.* at 19-20.)  They claim that the failure to take immediate action could have resulted in serious injury or an accident, and their actions are further justified by the "erratic behavior" they had witnessed from Plaintiff.  (*Id.*)

In opposition, Plaintiff argues that "the testimony of the parties and the police MVR footage in this case creates sufficient genuine issues of material fact from which a jury could conclude that Defendants (punching Plaintiff [several] times and striking him in the head with a flashlight) acted unreasonably and used excessive force." (ECF No. 24 at 9-10 (emphasis removed).) And because "a reasonable jury could conclude that Defendants used excessive force during their encounter with [P]laintiff, violating Plaintiff's Constitutional rights, there also exists a genuine issue as to whether Defendants breached their duty to intervene and prevent the use of excessive force on Plaintiff's person." (*Id.* at 15.)

"Qualified immunity protects government officials from being held liable for damages when their conduct does not violate a citizen's clearly established rights. As the Supreme Court has noted, qualified immunity advances a policy of 'shield[ing] officials from harassment, distraction, and liability when they perform their duties reasonably.'" *James v. New Jersey State Police*, 957 F.3d 165, 166 (3d Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (citations omitted).

Qualified immunity has two prongs: "First, a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right.' And second, the court must determine whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 168 (quoting *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015)). "The officers bear the burden of persuasion under each prong." *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024).

"To determine whether a right was 'clearly established,'" courts must "define the right allegedly violated at the appropriate level of specificity," and ask "whether the right was 'sufficiently clear that a reasonable official would understand that what he is doing violates that

right.'" *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (citations omitted).   To complete this inquiry, courts "first look to factually analogous precedents of the Supreme Court and the Third Circuit.   Then, [they] examine persuasive authorities, such as . . . nonprecedential opinions and decisions from other Courts of Appeals.   [Courts] may consider all relevant cases under this inquiry, not just those cited by the parties."   *Id.* (citations omitted).   "[I]n some exceptional cases the 'violation [is] obvious' such that general statements of law may suffice to show that a right is 'clearly established,' even in the absence of factually analogous precedent." *Peroza-Benitez*, 994 F.3d at 166 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).   For example, "[i]n the excessive force context, an 'obvious' case is one where the general statements of law articulated in *Graham v. Connor*, 490 U.S. 386 (1989), and *Tennessee v. Garner*, 471 U.S. 1 (1985), provide the requisite notice."   *Id.*

### 1. EXCESSIVE FORCE

"The right to be free from the use of excessive force has been recognized under the Fourth Amendment, which guarantees the right of citizens 'to be secure in their persons . . . against unreasonable . . . seizures.'"   *Anglemeyer*, 92 F.4th at 188 (quoting *Graham*, 490 U.S. at 394).

The question to be answered when excessive force is alleged "is whether, under the totality of the circumstances, 'the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"   *Id.* (quoting *Graham*, 490 U.S. at 397).   This question is analyzed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."   *Id.* (quoting *Graham*, 490 U.S. at 396).   And courts "make 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"   *Id.* (quoting *Graham*, 490 U.S. at 398).

Factors considered when assessing officers' reasonableness are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). Courts "also consider 'the physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *Id.* at 189 (quoting *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020)).

At summary judgment, the facts must be viewed "in the light most favorable to . . . the non-moving party," here Plaintiff. *Peroza-Benitez*, 994 F.3d at 166-67. And a district court must "analyze separately, and state findings with respect to, the specific conduct of each [defendant]." *Williams v. City of York, Pennsylvania*, 967 F.3d 252, 255 (3d Cir. 2020) (quoting *Grant v. City of Pittsburgh*, 98 F.3d 116, 126 (3d Cir. 1996)). When one party's narrative of events is "blatantly contradicted by the record," including by video footage, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Ringgold v. Keller*, 608 F. App'x 102, 104 (3d Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see also Castellani v. City of Atl. City*, Civ. No. 13-5848, 2017 WL 3112820, at *8 (D.N.J. July 21, 2017).

Here, there are genuine disputes of material fact that preclude summary judgment because when viewed in the light most favorable to Plaintiff, a reasonable jury could find that Basso and Thomason used objectively unreasonable force on the evening of December 7, 2020. There are two primary factual disputes. *First*, as to what precipitated the altercation between the officers and Plaintiff, and *second*, whether the officers' response was objectively reasonable under the circumstances.

According to Plaintiff's account, which the Court must credit at this stage, Plaintiff was cooperating with the order to put his hands on his truck, had not been told he was under arrest, was turned around by Thomason, and then Basso grabbed Plaintiff and hit him with a flashlight on the top of the head and took Plaintiff to the ground face-first.  (PSMF ¶¶ 3-4.)  Both officers then repeatedly punched Plaintiff, eventually handcuffed him, and put him in the back of the patrol vehicle.  (PSMF ¶¶ 3-4.)  Plaintiff suffered a concussion and was left with a head wound that required four staples and left a scar.  (PSMF & RPSMF ¶¶ 5-7.)

According to Defendants' account, Plaintiff is responsible for the altercation because while Thomason was retrieving his handcuffs, Plaintiff "turned around, utter[ed] some kind of curse words and grabbed . . . Thomason."  (ISMF ¶¶ 21.)  This required the officers to use force to gain control of Plaintiff, particularly because Plaintiff "had his arm around . . . Thomason such that [Plaintiff's] hand was near . . . Thomason's firearm."  (ISMF ¶¶ 23-31.)  Defendants admit to punching Plaintiff "in several places."  (ISMF ¶¶ 26-27, 62 ("Ernest Thomason and Michael Basso do use punches to gain control of Mr. Parnell."); *see also* ECF No. 24-9 at 8 (Question: "Where did you hit him with your fist?"  Thomason: "I'd have to refer to the report.  I know it was in several places, on his side, his face, his shoulder, neck area.").)  Defendants also admit that Basso had a flashlight in his hand, but they deny that Basso struck Plaintiff in the head with the flashlight.  (ISMF ¶¶ 42-43.)  During Basso's deposition, however, he testified that the flashlight was in his right hand as he struck Plaintiff with that hand.  (ECF No. 24-6 at 8 (Question: "Would you agree that you struck him several times with the flashlight?"  Basso: "No, sir.  The flashlight was in my hand as I struck him."  Question: "Okay.  The hand that you struck him with had a flashlight in it; correct?"  Basso: "Yes, sir.").)

The Court has reviewed the MVR footage provided by the parties and does not find that Plaintiff's account is clearly contradicted.  The parties' competing accounts are both plausible

interpretations of what the Court has viewed, which means the Court must accept Plaintiff's account for purposes of summary judgment. *See Rush v. City of Philadelphia*, 78 F.4th 610, 618 (3d Cir. 2023) ("We disagree that any of these facts is irrefutably demonstrated from either the record or the contemporaneous video, viewing them in the light most favorable to [the plaintiff]. . . . Officer Nicoletti offers merely one of several possible 'interpretation[s]' of the events that unfolded, we are bound to choose the interpretation most favorable to [the plaintiff]."); *Greene v. Kelly*, 2022 WL 1024611, at *2 (3d Cir. Apr. 6, 2022) ("[O]ur review leads us to conclude that the video surveillance evidence does not clearly depict the events, as the District Court also found. It does show the encounter was brief. But it does not contradict [the plaintiff's] version of events.").

Based on the MVR footage, a jury could find that Plaintiff was standing facing the back of his truck with Basso and Thomason behind him. Plaintiff then turns, Thomason appears to grab Plaintiff's upper body, and Plaintiff lifts his hands to grab Thomason in response. Basso then pulls Plaintiff and appears to strike Plaintiff in the head with the flashlight that is in Basso's right hand. Basso and Thomason then push and pull Plaintiff to the ground and are on top of Plaintiff striking him. Approximately thirty seconds after the physical altercation begins, Plaintiff is no longer being struck and is in the process of being handcuffed.

On this record and considering the relevant factors in the light most favorable to Plaintiff, a jury could find that the factors weigh in Plaintiff's favor and that the officers' use of force was not justified under the totality of the circumstances. If, as Plaintiff maintains, he promptly pulled over when stopped for a traffic infraction, was cooperating with the officers' orders, was not resisting arrest or attempting to flee, and had not been informed he was under arrest, the officers' decision to grab, repeatedly strike, and drive Plaintiff to the ground, with Basso utilizing his flashlight to strike Plaintiff in the head, could very well be deemed to be objectively unreasonable

force.  *See, e.g.*, *Green v. New Jersey State Police*, 246 F. App'x 158, 161-62 (3d Cir. 2007) ("Green was arrested for a nonviolent offense and was unarmed.  Although Green was agitated and had brought his handcuffs forward, an action certainly justifying a physical response from the police, it would not have been reasonable for Parry to violently grab his neck without first using lesser force.  Similarly, although the officers were justified in using force to extract Green once he refused to exit, it would not have been reasonable for Fife to strike him on the head twice with a flashlight.  Finally, if he was restrained on the ground after being pulled from the car, it would not have been reasonable for the officers to continue kicking him.").

The Court also finds that there is a clearly established right that could preclude the defense of qualified immunity if the facts are determined in Plaintiff's favor.  The right at issue is whether officers use unconstitutional force when they repeatedly strike (including with a flashlight) and drive to the ground an unarmed motorist who is not resisting arrest or attempting to flee.  There is case law in this Circuit and others, pre-dating December 2020, that supports the conclusion that law enforcement officers must limit their use of force when an unarmed individual not suspected of a serious crime is cooperating and neither resisting arrest nor attempting to flee.[4]  *See, e.g.*, *El v. City of Pittsburgh*, 975 F.3d 327, 340 (3d Cir. 2020) ("[A]n unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down."  (collecting cases)); *see also Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731-32 (5th Cir. 2018) ("In the present case, eyewitnesses claim that [the plaintiff] put his hands in the air when the officers entered the residence, complied with the officers' commands, and did not resist

---

[4]     Both officers acknowledged during their depositions that if Plaintiff's accusations are accepted, hitting Plaintiff in the head with a flashlight is unreasonable and lethal force.  (ECF No. 24-6 at 7; ECF No. 24-9 at 8.)

arrest. Yet Officer Snow allegedly threw [the plaintiff] to the ground and twice shocked him with a Taser while he was being beaten by Officer Romero. In light of our prior case law, Officer Snow should have known that he could not use that amount of force on an individual who was not resisting arrest."); *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015) ("When a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot."); *Brown v. Lewis*, 779 F.3d 401, 419 (6th Cir. 2015) ("This circuit has further concluded that, since at least 2009, the use of violence against a subdued and non-resisting individual has been clearly established as excessive, regardless of whether the individual had been placed in handcuffs."); *Shannon v. Koehler*, 616 F.3d 855, 859 (8th Cir. 2010) ("[I]t is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." (citation omitted)); *Hill v. Algor*, 85 F. Supp. 2d 391, 409 (D.N.J. 2000) ("The right to be free from an unprovoked beating while in police custody is clearly established.").

Thus, Defendants Basso and Thomason have not satisfied their burden of proving the defense of qualified immunity because critical facts remain in dispute. *See, e.g.*, *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."). Accordingly, summary judgment is denied as to these Defendants.

### 2. *FAILURE TO INTERVENE*

"[A] police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force." *El*, 975 F.3d at 335 (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)). "If a police officer, whether supervisory or not, fails or refuses to intervene

when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Merman v. City of Camden*, 824 F. Supp. 2d 581, 600 (D.N.J. 2010) (quoting *Smith*, 293 F.3d at 650-51). An officer is only liable, however, where "there is a realistic and reasonable opportunity to intervene" in the "use of force." *El*, 975 F.3d at 335-36 (quoting *Smith*, 293 F.3d at 651). "[D]uration of the incident is key." *Id.* Where, for example, "an incident is momentary, its 'brevity' may 'defeat[] [a] . . . failure-to-intervene claim.'" *Id.* (quoting *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018)).

Plaintiff's failure-to-intervene claim in Count Two raises issues as to whether there was a "realistic and reasonable opportunity" for either Basso or Thomason to intervene to stop the other, and whether the officers can be liable for failing to intervene when they both directly participated in the alleged use of excessive force. The Court will address each issue in turn.

As to whether there was a "realistic and reasonable opportunity" to intervene, courts in the Third Circuit routinely find that there is no realistic opportunity when the time to intervene is "momentary" and merely a matter of seconds. *See, e.g.*, *El*, 975 F.3d at 335 (holding that "no reasonable jury could conclude that" an officer "had a realistic and reasonable opportunity to intervene" where the incident (use of a taser) occurred "with a matter of roughly five seconds"); *Wenzel v. Bovee*, Civ. No. 20-291, 2022 WL 4236715, at *5 (W.D. Pa. Sept. 14, 2022) (granting summary judgment on failure-to-intervene claim when "the entire event from start to finish lasts a few seconds"); *Byrnes v. Moody*, Civ. No. 15-570, 2016 WL 4508245, at *5 (W.D. Pa. Aug. 29, 2016) (no realistic opportunity to intervene "in the few seconds that elapsed between the time that Plaintiff was brought down to the floor" and the "sudden and rapid succession of two hand strikes followed by two knee strikes" that led to the excessive force claim); *Williams v. Dzoba*, Civ. No. 09-6355, 2014 WL 2926506, at *6 (D.N.J. June 26, 2014) (no realistic opportunity to intervene

when "a mere two or three seconds elapsed before [the officer] put his hands on [the plaintiff] and flipped him to the ground").

In contrast, courts have declined to grant summary judgment when the "use of force lasted long enough to create a genuine issue of fact regarding whether there was an opportunity to intervene." *El*, 975 F.3d at 336. The length of time needed to create a genuine issue of fact is specific to the circumstances of each case, with some courts declining to grant summary judgment when the force occurred over a period of thirty seconds or more. *See, e.g.*, *Smith*, 293 F.3d at 644, 650 (plaintiff's testimony created dispute of material fact where he alleged he was "rammed . . . into walls[,] . . . knocked . . . to the floor[,] . . . kicked and punched[,] . . . pulled . . . to his feet," and beaten some more (internal quotation marks omitted)); *Witt v. City of Vineland*, Civ. No. 20-14678, 2024 WL 1928213, at *4 (D.N.J. Apr. 30, 2024) (declining to grant summary judgment on failure-to-intervene claim when "the entire use of force incident in this case occurred in just over thirty seconds"); *Colon v. Kinnel*, Civ. No. 21-03337-JMG, 2023 WL 1783774, at *11 (E.D. Pa. Feb. 6, 2023) (declining to grant summary judgment on failure-to-intervene claim when the defendants argued that "the short duration of the incident (approximately 35 seconds) prevented . . . the officers from intervening").

Based on the above case law, the Court cannot find that no reasonable jury could conclude that the duration of the excessive force in this case—approximately thirty seconds from when the first physical contact occurred to when the officers stopped striking Plaintiff—is too short to present a realistic or reasonable opportunity to intervene. Based on the Court's review of the MVR footage, a jury could reasonably determine that the officers had a realistic opportunity to intervene to stop each other from further striking Plaintiff after he was initially driven to the ground but failed to do so and, instead, unconstitutionally struck him. Therefore, summary judgment on this basis alone cannot stand.

As to whether Basso and Thomason can be held liable for failing to intervene when they both directly participated in the alleged use of excessive force, the only appellate guidance that this Court has identified is an unreported decision from the Second Circuit Court of Appeals, which enunciated the principle that "[w]here an alleged use of excessive force is a single, indivisible assault, it makes little or no sense to say that the same defendant has both used excessive force and failed to intervene—or, to put it more generally, that a defendant can be held liable for failing to intercede in and prevent an unlawful act in which she herself was the principal." *Walker v. City of New York*, 638 F. App'x 29, 32 (2d Cir. 2016). How this principle should be applied has led to some conflict amongst district courts.

Almost universally, district courts hold that a single defendant cannot be liable for failing to intervene to stop his or her own unconstitutional actions. *See, e.g.*, *Dixon v. Schweizer*, Civ. No. 18-5403, 2020 WL 4600187, at *8 (E.D. Pa. Aug. 11, 2020) (granting summary judgment on failure-to-intervene claim where the officer was accused of excessive force by tackling the plaintiff, "because a single defendant cannot be liable for both excessive force and failure to intervene where the 'alleged use of excessive force is a single, indivisible assault'" (citation omitted)); *Mazur v. Twp. of Marlboro*, Civ. No. 16-05527, 2020 WL 373343, at *5 (D.N.J. Jan. 23, 2020) ("Because it is undisputed that Officer Gonzalez punched Mazur, and that punch is the basis of the failure to intervene claim, Mazur cannot assert such claim against officer Gonzalez."); *Holliday v. City of Elizabeth*, Civ. No. 13-1006, 2018 WL 953346, at *9 (D.N.J. Feb. 20, 2018) ("Plaintiff has presented the Court with no authority, nor could the Court find any, indicating that a police officer allegedly using excessive force is also liable under a theory of failure to intervene by not stopping herself."); *see also Williams v. City of Grand Rapids*, 672 F. Supp. 3d 395, 411 (W.D. Mich. 2023) (noting that the plaintiff "cite[d] no caselaw demonstrating that an officer may be held liable for both actively using excessive force and failing to intervene to stop the same force

that he or she was likewise applying"). The Court finds these decisions persuasive. To hold a defendant liable for failing to intervene to stop his or her own excessive force would be both counterintuitive and redundant—the defendant could only be liable for failing to intervene if he or she has first been found liable for excessive force.

The case law is less clear where multiple defendants are alleged to have directly participated in a single incident of excessive force. Some district courts have taken the position that so long as a defendant was a direct participant, the defendant cannot be liable as a matter of law for failing to intervene—even if other defendants engaged in unconstitutional force simultaneously. *See, e.g.*, *Gordon v. Carter*, Civ. No. 15-396, 2019 WL 7485328, at *4-5 (N.D. Fla. Dec. 9, 2019), *report and recommendation adopted*, 2020 WL 61043 (N.D. Fla. Jan. 6, 2020) (granting summary judgment on failure-to-intervene claim to several defendants who were accused of "punching" the plaintiff "everywhere," because the defendants "cannot be liable for both using excessive force and failing to intervene"); *see also Case v. City of New York*, 233 F. Supp. 3d 372, 402 (S.D.N.Y. 2017) ("Plaintiffs may not assert a failure to intervene claim against a defendant who they have plausibly alleged was personally involved in the underlying violation.").

Not every court has agreed with this approach, with some district courts recognizing a tension between the two theories of liability but finding nothing in the law that bars a defendant who directly participates in the use of excessive force from also being liable for failing to intervene to stop others from acting unconstitutionally. *See, e.g.*, *Polanco v. City of New York*, Civ. No. 14-7986, 2018 WL 1804702, at *10 (S.D.N.Y. Mar. 28, 2018) (declining to grant summary judgment on failure-to-intervene claim because there were "genuine issues of material fact as to the extent of each defendant's role in the use of excessive force against plaintiff"). Notably, in *Conforti v. City of Franklin*, the plaintiff accused two officers of, among other things, throwing him "face-first onto the ground and pummel[ing] him with as many as twenty knee strikes and punches to

18

the head." 559 F. Supp. 3d 815, 817 (E.D. Wis. 2021). The plaintiff brought claims for excessive

force and failure to intervene against both officers. On summary judgment, the two officers argued

that they could not be liable for failing to intervene when the plaintiff alleged that "they both

directly participated in the alleged uses of excessive force." *Id.* at 819.

> The district court disagreed with the officers. It wrote:

>> If both officers used excessive force, a jury could reasonably find
>> that they each failed to intervene to prevent the other officer from
>> kicking and punching the plaintiff, for an officer who actively kicks
>> and punches a suspect has a realistic opportunity to prevent the other
>> officer from simultaneously kicking and punching the same suspect.
>> Simply put, instead of joining in the use of force, the officer could
>> have restrained his partner "or at least cautioned [him] to stop."
>> Thus, . . . [the two officers] could each be liable for both the injuries
>> that the plaintiff suffered from his own use of force and the injuries
>> the plaintiff suffered from the other officer's use of force.

> [*Id.* at 819-20 (citation omitted).]

The district court rejected a rule that would insulate all officers who directly participate in a use of

excessive force from liability on a failure-to-intervene claim, fearing that it "would lead to perverse

results." *Id.* at 821. "For example, an officer who fails to intervene to prevent his partner from

repeatedly striking a suspect in the head with a baton could avoid liability for the suspect's

resulting head injuries by striking the suspect's leg and causing a small bruise." *Id.* Even though

the court thought that as a "practical matter" it was unnecessary for the plaintiff to pursue a failure-

to-intervene claim against the two officers (because the plaintiff was pursuing a theory that both

officers were liable for excessive force and would be jointly liable for all injuries), the court

reasoned that "even if the failure-to-intervene claims are unnecessary, they are not legally

defective" and could not be eliminated on summary judgment. *Id.* at 820.

> Having carefully reviewed relevant precedent and based on the facts in this case, the Court

agrees with the district court's analysis in *Conforti.* To hold as a matter of law that Plaintiff here

cannot assert both an excessive force and failure-to-intervene claim against the officers could lead to perverse results. An officer could know that another officer is using unconstitutional force and could have a realistic opportunity to prevent that other officer from continuing to use that force notwithstanding the officer's own participation in the incident. In the present case, for example, if the jury were to determine that Basso struck Plaintiff with a flashlight and that this was unconstitutional force under the circumstances, the jury might also determine that Thomason is liable for failing to intervene to stop the use of force with a flashlight—even though Thomason was a direct participant. Similarly, if a jury were to determine that Thomason engaged in excessive force, it could determine that Basso is liable for failing to intervene to stop Thomason.[5] That said, this Court agrees that an officer cannot be liable for failing to intervene to stop his or her own use of excessive force. *See, e.g.*, *Dixon*, 2020 WL 4600187, at *8. Thus, to the extent that either Basso or Thomason are determined to have used excessive force, they may not also be held liable for failing to intervene to stop their own actions.

Accordingly, the Court declines to grant summary judgment on Count Two for failure to intervene against Defendants Basso and Thomason.

---

[55]    If either Basso or Thomason is not found liable for excessive force, then the other officer could not be liable for failure to intervene. In addition, if neither officer is determined to have used excessive force, then the failure to intervene claim necessarily fails against both officers. *See Zier v. Braconi*, Civ. No. 09-5479, 2012 WL 254061, at *4 (D.N.J. Jan. 27, 2012) ("[B]ecause the Court concludes that there was no excessive force . . . , Plaintiff's § 1983 claims . . . for supervisory liability and failure to intervene also necessarily fail.").

### B. COUNT THREE—SUPERVISORY LIABILITY

Plaintiff seeks to hold Kunz liable as a supervisor, in his official and individual capacities, for his subordinates' excessive use of force.  The Court addresses each basis for supervisory liability in turn.

#### 1. OFFICIAL CAPACITY

Plaintiff's claims against Kunz in his official capacity as Chief of the Jackson Township Police Department are dismissed as duplicative of Plaintiff's claims against Jackson Township. "A § 1983 suit against a government official in his or her official capacity 'represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" *Hernandez v. City of Paterson*, Civ. No. 22-6763, 2023 WL 6876008, at *10 (D.N.J. Oct. 18, 2023) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  "Accordingly, where claims against an officer in his official capacity are duplicative of claims against the municipality, those claims will be properly dismissed as redundant." *Id.*; *see also Perciavalle v. City of Aliquippa*, Civ. No. 20-474, 2021 WL 269792, at *5 (W.D. Pa. Jan. 27, 2021) ("[B]ecause the City of Aliquippa is named as a defendant in this action, [the plaintiff's] official-capacity claims against Walker will be dismissed."); *Khalil v. City of Paterson*, Civ. No. 18-3241, 2018 WL 6168191, at *3 (D.N.J. Nov. 26, 2018) ("Because of the 'inherent redundancy' of suing both the City as well as Chief Fraher in his official capacity, Plaintiff's claims against Chief Fraher in his official capacity are dismissed.").

Here, the claims against Kunz in his official capacity are functionally identical to the municipal liability claims against Jackson Township in Count Four.  Plaintiff offers no justification

21

for retaining both.[6]  Thus, the official capacity claims against Defendant Kunz are dismissed with prejudice as duplicative.

### 2. INDIVIDUAL CAPACITY

"[T]wo theories of supervisor liability" are available under section 1983 upon a proper factual showing.  *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).  First, "supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).  Second, supervisors can be liable if "they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violation."  *Id.*

Here, Plaintiff seeks to hold Kunz individually liable under the first theory of supervisor liability based on Kunz "permit[ing] an unconstitutional custom to exist of tacitly approving his officers' use of excessive force as evidenced by how he presides over a flawed Internal Affairs process in violation of the New Jersey Attorney General Internal Affairs Guidelines."[7]  (ECF No.

---

[6]      Plaintiff writes in his opposition brief that he "offered to dismiss the claims against Defendant Kunz in his official capacity, but Defendants never responded to the offer."  (ECF No. 24 at 33.)

[7]      Plaintiff does not contend that Kunz is liable for participating in the excessive force, directing Basso or Thomason to engage in excessive force, or having knowledge of or acquiescing in their alleged excessive force.  Even if Plaintiff did so contend, there does not appear to be any support for this theory of supervisor liability in this case.  *See, e.g.*, *See Stringer v. Cnty. of Bucks*, Civ. No. 22-1525, 2023 WL 2163871, at *5 (E.D. Pa. Feb. 22, 2023) ("[B]ecause [the plaintiff] includes no facts showing Sergeant Mander authorized or participated in any of the incidents alleged in the Amended Complaint, the Court will dismiss Count II—[the plaintiff's] supervisory liability claim."); *Washington v. Albiano*, Civ. No. 19-12190, 2022 WL 17039293, at *4 (D.N.J. Nov. 17, 2022) (dismissing supervisory liability claim where "Plaintiff d[id] not allege Defendants . . . were personally involved in the alleged assault . . . or that they had contemporaneous knowledge of the assault and approved or acquiesced to it"); *cf. Stabile v. Conklin*, Civ. No. 20-02205, 2023 WL 5371721, at *4 (D.N.J. Aug. 22, 2023) ("testimony that Conklin had one of Plaintiff's arms during the take down is sufficient for . . . supervisory liability").

24 at 32.)  Defendants argue that Plaintiff has not presented "any fact to support a finding of deliberately indifferent conduct by Chief Kunz." (ECF No. 29 at 6.)  They contend that Kunz "and his Department have an Internal Affairs Policy which complies with and mirrors the Attorney General Guidelines." (*Id.*)

Once policymaking authority is established, "the standard for personal liability under section 1983 is the same as that for municipal liability." *Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999); *see also D.B. v. Tredyffrin/Easttown Sch. Dist.*, Civ. No. 17-2581, 2020 WL 6262181, at *16 (E.D. Pa. Oct. 23, 2020).  The record in this case is clear that Kunz had policymaking authority over Jackson Police Department's internal affairs procedures.  It is undisputed that Kunz is responsible for training, supervising, and disciplining police officers; appointing personnel to maintain the Department's internal affairs process; and there is only one full-time lieutenant in charge of internal affairs who reports directly to Kunz and meets with Kunz as needed to discuss investigations.  (MSMF & RMSMF ¶¶ 92-94, 97-100; PSMF & RPSMF ¶¶ 54-55.)  Kunz confirmed during his deposition that he has "the final say concerning all Internal Affairs policies and investigations." (ECF No. 24-17 at 4.)

Thus, for the reasons given below as to Jackson Township's municipal liability for an unconstitutional custom, genuine issues of fact exist as to whether Defendant Kunz can also be held liable as a policymaker for the Jackson Township Police Department's alleged custom of tacitly approving the use of excessive force by creating an atmosphere in which the use of excessive force was tolerated.  *See, e.g., Cordial v. Atl. City*, Civ. No. 11-01457, 2014 WL 1095584, at *10 (D.N.J. Mar. 19, 2014).  Accordingly, the motion for summary judgment on Count Three for supervisory liability against Defendant Kunz in his individual capacity is denied.

### C. COUNT FOUR—UNLAWFUL POLICY, CUSTOM, PRACTICE, OR INADEQUATE TRAINING

Plaintiff claims that Jackson Township is liable for (i) developing and maintaining customs exhibiting deliberate indifference to the constitutional rights of suspects exposed to excessive force, and (ii) failing to adequately train its police officers with respect to the use of force.[8]

To find a municipality liable under § 1983, a plaintiff must prove the existence of a policy or custom that resulted in a constitutional violation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978). Liability "must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). A plaintiff can show the existence of a policy when a decisionmaker with final authority "issues an official proclamation, policy, or edict." *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Custom may be established by showing that a "course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* A plaintiff must also "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).

To make out a claim under a failure to train or supervise theory, the plaintiff must show that "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted). "Additionally, 'the identified deficiency in a . . . training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have]

---

[8]    Because the Court granted judgment in favor of Kunz on all official-capacity claims, Count Four is now only against Jackson Township.

actually caused' the constitutional violation." *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

The Court will begin by addressing Plaintiff's failure-to-train claim followed by the unconstitutional custom claim.

### 1. FAILURE TO TRAIN

To survive summary judgment on a failure-to-train claim, a plaintiff "must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). "Establishing municipal liability on a failure to train claim under § 1983 is difficult and applies in narrow situations." *Cooper v. City of Paterson*, Civ. No. 23-03566, 2024 WL 1298917, at *5 (D.N.J. Mar. 27, 2024) (citation omitted).

Plaintiff argues that "there is sufficient evidence to create a genuine issue of material fact with respect to the adequacy of . . . Jackson Township's use of force training," but he points to nothing in the record that identifies any specific deficiency with the training that either Basso or Thomason received. (ECF No. 24 at 29-30.) Nor is there evidence suggesting that additional training would have made a difference in this case. To the contrary, the undisputed record establishes that both officers graduated from the Ocean County Police Academy where they were trained on the use of force, including about the six levels of force, and they have received biannual training since joining the Jackson Township Police Department. (ISMF & RISMF ¶¶ 3-6, 36-39.) Thomason was also trained to be a "use of force training officer. (ISMF & RISMF ¶ 7.)

Without an evidentiary basis, Plaintiff's failure-to-train claim must be dismissed. It cannot simply be inferred that there is a "causal nexus" between the alleged deprivation of Plaintiff's rights and Jackson Township's training regime when there is "no proof . . . that implementing

different training practices 'would have made any difference.'" *Mills v. City of Philadelphia*, Civ. No. 14-593, 2024 WL 1253688, at *11 (E.D. Pa. Mar. 22, 2024) (citation omitted); *see also Williams v. Ponik*, 822 F. App'x 108, 113 (3d Cir. 2020) (affirming grant of summary judgment on failure-to-train claim where the officers "attended the police academy"; "were trained on the use of force under the New Jersey Attorney General guidelines"; were "trained in the use of pepper spray at the academy"; and attended "mandatory bi-annual training that include[d] instruction on use of force and pepper spray"); *Altidor v. Toms River Police Dep't*, Civ. No. 18-14834, 2022 WL 17155698, at *14 (D.N.J. Nov. 22, 2022) ("[A]ll police officers on the scene were trained in use of force. . . . Thus, [the plaintiff] cannot argue that Toms River was 'deliberat[ely] indifferen[t]' to ensuring the police officers were trained in use of force procedures."); *Meza v. Jackson Twp.*, Civ. No. 18-15206, 2021 WL 2549319, at *13 (D.N.J. June 22, 2021) (granting summary judgment on failure-to-train claim where the plaintiff had "not provided proof indicating a specific training failure exist[ed] which [could] be causally connected to Defendants' actions").

Accordingly, judgment is entered in Defendant Jackson Township's favor on the failure-to-train claim in Count Four.

### 2. UNCONSTITUTIONAL CUSTOM

For a section 1983 claim based on a municipal custom to survive past summary judgment, a plaintiff must "show 'a municipal custom coupled with causation—*i.e.*, that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [Plaintiff's] injury.'" *Adams v. City of Atl. City*, 294 F. Supp. 3d 283, 303 (D.N.J. 2018) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). The custom must demonstrate "'deliberate indifference' toward the class of persons who might suffer a constitutional injury as a result of the conduct in question." *Benhaim v. Borough of Highland Park*, 79 F. Supp. 3d 513, 521 (D.N.J. 2015) (quoting *Simmons v. City of*

*Philadelphia*, 947 F.2d 1042, 1070 (3d Cir. 1991)).  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). However, "[a]s long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 302 (D.N.J. 2015) (citation omitted).

Plaintiff points out that on at least two prior occasions, courts in this District have allowed municipal liability claims against Jackson Township to proceed past summary judgment in the excessive-force context.  In 2013, the district court allowed a *Monell* claim to be maintained based on the allegation that "Jackson's Internal Affairs procedures were part of a custom which showed deliberate indifference to [the] rights of those who might interact with its officers." *Day v. Jackson Twp.*, Civ. No. 10-4011, 2013 WL 394151, at *11 (D.N.J. Jan. 30, 2013).  The court characterized Jackson's internal affairs investigations as "lackadaisical," and it noted that the undisputed facts "demonstrate[d] that the Jackson Police Department, in some instances, ha[d] failed to follow the New Jersey Attorney General Guidelines related to internal affairs investigations." *Id.* at 10-11. For example, it was alleged that "Jackson fail[ed] to interview all of the parties to excessive force complaints, as required by the Guidelines." *Id.*  It was also alleged that Jackson did "not adequately track complaints lodged against individual officers and use that history as either a factor in subsequent excessive force investigation or as part of an 'Early Warning System' that might alert the Department to the presence of officers with a propensity to use excessive force." *Id.*

Then, in 2021, the district court again allowed a *Monell* claim against Jackson based on the allegation that "Jackson Township had a custom of failing to properly investigate internal affairs complaints preceding this incident." *Meza*, 2021 WL 2549319, at *13.  The court highlighted the following evidence as supporting the plaintiff's claim: Kunz's testimony that "internal affairs

investigations are 'not routinely' started when . . . [Jackson] receives notices of claims or potential claims"; several lawsuits had been filed against Jackson "all of which involved allegations of excessive force" and "no policy changes were made in response"; and "[i]mportantly, . . . Kunz testified that despite these prior excessive force lawsuits, the Jackson Township Police Department does not track the outcomes of . . . lawsuits"; "when a lawsuit is initiated against the Department, it leaves internal affairs complaint investigations incomplete while litigation is pending"; and no internal affairs investigation was completed in *Meza*. *Id.* at 12.  It found this evidence "sufficient" for "a reasonable jury . . . [to] find [that] Jackson Township was deliberately indifferent in investigating claims of excessive force against its police department." *Id.* at 13 (collecting cases).

Here, too, there is sufficient evidence regarding the rigor, or lack thereof, of the Jackson Township Police Department's internal affairs procedures to permit Plaintiff's *Monell* claim to proceed to trial.  A jury could reasonably conclude that the Department's manner of investigating and tracking claims of excessive force shows a deliberate indifference of the constitutional rights of those who might interact with Jackson Township's officers and that there is a causal connection between this custom and the injuries suffered by Plaintiff.

Indeed, despite the allegation of excessive force in this case, both officers involved testified that they were never interviewed by Jackson Township's internal affairs.  (PSMF & RPSMF ¶¶ 14, 34.)  And it is undisputed that no internal affairs investigation was opened or conducted because Kunz decided based on his own review of the available evidence that "a reasonable officer could believe that [Plaintiff] was attempting to disarm [the officer] and thus . . . justified in using force." (MSMF & RMSMF ¶ 107; PSMF & RPSMF ¶ 64.)  The failure to investigate appears to conflict with Jackson's own internal affairs policy that states that "[i]t is the policy of the Jackson Township Police Department to accept and investigate all complaints of alleged officer misconduct or wrongdoing from any citizen . . . or any other source."  (ECF No. 24-18 at 1.)

According to Kunz, tort-claims notices and civil complaints against officers for excessive force do not necessarily prompt internal affairs investigations in Jackson Township. (ECF No. 24-17 at 6.) He testified that Jackson Township's Police Department does not have an "institutional process" for reviewing such claims internally. (*Id.*) Kunz "look[s] at them" and recommends an investigation only if he sees "anything that appears worth investigating." (*Id.*) The usual process is for the Department to forward the notices and complaints to its "attorneys for them to handle." (*Id.*) And once in the hands of the Department's attorneys, Kunz testified that the attorneys will not always tell the Department the outcome of the complaints. (*Id.* at 7.) When asked, Kunz could not recall the outcomes of several excessive-force complaints filed against him and the Jackson Township Police Department over several years, and he further testified that the Department does not track the outcome of the lawsuits against its officers, even though the Attorney General's Internal Affairs Policy & Procedures direct that, "at a minimum," an agency must track "[c]ivil actions filed against [an] officer." (*Id.* at 7-9; ECF No. 24-19 at 17.) Finally, Kunz testified that no changes were made to Jackson's internal affairs procedures in response to the district court's 2021 decision in *Meza* that identified various deficiencies with the procedures. (ECF No. 24-17 at 2.) Kunz could not even recall reviewing the district court's decision in *Meza.* (*Id.*)

Based on this evidence, a reasonable jury could conclude that the series of excessive-force complaints against Kunz and Jackson Township over several years, the failure to track the outcome of civil actions, and the lack of an internal affairs investigation in the present case support the finding that Jackson Township has had a custom of failing to properly investigate excessive-force complaints. *See Adams*, 294 F. Supp. 3d at 302 ("Plaintiff points out several deficiencies in the investigative process of Internal Affairs . . . . All of this together is enough for a reasonable jury to conclude that the ACPD maintained a deficient internal affairs department and failed to meaningfully investigate complaints made by civilians regarding officers' use of excessive force."

(collecting cases)).  And a reasonably jury could also conclude that Jackson Township's custom proximately caused Plaintiff's injuries by fostering an environment that led the officers in this case to believe it unlikely that they would face repercussions for the unconstitutional use of force.

Accordingly, summary judgment is denied on the claim for municipal liability in Count Four against Defendant Jackson Township arising from its Police Department's alleged failure to adequately investigate and monitor complaints of excessive force against its officers.

### D.  COUNT FIVE—NEW JERSEY CIVIL RIGHTS ACT

Defendants do not argue that judgment should be entered in their favor on Count Five under the New Jersey Civil Rights Act.  (*See generally* ECF Nos. 19-2 & 20-1.)  Accordingly, judgment is not entered in any party's favor on Count Five.

### E.  COUNTS SIX AND SEVEN—ASSAULT AND BATTERY & NEGLIGENCE

Defendants Jackson Township and Kunz argue that they should not be held vicariously liable for the intentional torts of their employees, which includes any finding that Basso and Thomason committed the torts of assault and battery.  (ECF No. 20-1 at 23-25.)  Basso and Thomason are silent in their briefing as to Count Six (for assault and battery) and Count Seven (for negligence).  (*See generally* ECF No. 19-2.)  In opposition, Plaintiff writes that these state-law claims "are against Defendants Basso and Thomason, not Defendant Jackson Township." (ECF No. 24 at 5.)  Plaintiff's position tracks the Complaint, which asserts the claims against Basso and Thomason.  (ECF No. 1 at 11-12.)  Thus, Counts Six and Seven shall not be read to be asserted against Jackson Township and Kunz.  Because neither Basso nor Thomason argue that they are entitled to summary judgment on these claims, judgment is not entered in any party's favor.

### F.  COUNT EIGHT—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

All Defendants argue that Plaintiff's intentional infliction of emotional distress ("IIED") claim fails because Plaintiff did not "suppl[y] any fact in discovery to . . . establish a nexus between

any alleged emotional distress and his . . . arrest." (ECF No. 20-1 at 37-38; *see also* ECF No. 19-2 at 21-22.) For example, Plaintiff did not provide "a diagnosis or an expert opinion to demonstrate that he has suffered severe and emotional distress within the meaning" set forth in case law. (ECF No. 20-1 at 38; *see also* ECF No. 19-2 at 22.) In opposition, Plaintiff writes that he is not responding to Defendants' arguments and is no longer "pursuing an Intentional Infliction of Emotional Distress claim." (ECF No. 24 at 5.) Because Plaintiff has abandoned his IIED claim, judgment is entered in Defendants' favor on Count Eight. *See, e.g.*, *Wurtzbacher v. Winslow Twp.*, Civ. No. 17-05026, 2019 WL 1238825, at *6 (D.N.J. Mar. 18, 2019) ("Plaintiff appears to abandon any excessive force claim against Valentino. . . . Accordingly, the Court grants summary judgment to Valentino on the excessive force claims against him.").

## G. ATTORNEY'S FEES

Defendants ask the Court to grant them attorney's fees pursuant to 42 U.S.C. § 1988 on the basis that the claim for supervisor liability against Kunz is "frivolous" as well as that Plaintiff was advised that the official-capacity claim was redundant. (ECF No. 20-1 at 38-40.) Ultimately, the application is premature and denied at this time without prejudice. The Court has not granted summary judgment on the supervisor liability claim, and Plaintiff has submitted correspondence indicating that he informed Defendants that he was willing to consent to the dismissal of the official-capacity claims against Kunz subject to certain conditions. (ECF No. 24-20.) Plaintiff writes that Defendants did not reply to his correspondence, and Defendants do not dispute this representation. (ECF No. 24 at 33.) In any event, any application for attorney's fees can be renewed later. *See* Fed. R. Civ. P. 54(d)(2)(B); *see also White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 454 (1982).

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, and other good cause shown, Defendants' Motions for Summary Judgment (ECF Nos. 19 & 20) are **GRANTED** in part and **DENIED** in part.   An appropriate Order follows.

Dated:  May 30, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE